**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Magistrate No. 20-00070 (GMH) |
| | : | |
| **ALEXANDER ALAZO,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION TO CONTINUE PRELIMINARY HEARING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully requests that the Court continue the preliminary hearing in this case, currently scheduled for May 14, 2020 at 10:00 a.m., until at least June 15, 2020, or a date thereafter that is convenient for the Court and the parties. By way of argument, the government provides the following facts:

**I.   PROCEDURAL HISTORY**

On April 30, 2020, Defendant Alazo appeared before this Court for an initial appearance on a Criminal Complaint charging him with 18 U.S.C. § 112(a) (violent attack on a foreign official or official premises using a deadly or dangerous weapon, or attempt to do the same), 18 U.S.C. § 924(b) (interstate transportation of a firearm and ammunition with intent to commit a felony), and 18 U.S.C. § 970(a) (willfully injuring or damaging property belonging to or occupied by a foreign government in the United States). On that same date, the government requested pretrial detention pursuant to the Bail Reform Act, 18 U.S.C. § 3142(f)(1)(A). This request was granted, and a detention hearing was set for May 4, 2020, due to a defense request for a continuance. On May 4, 2020, the Court conducted a detention hearing and granted the government's motion for Defendant Alazo's pretrial detention. On May 12, 2020, the Court issued an Order of Detention Pending Trial, which included findings of fact and a written statement of the reasons for detention.

*See* ECF No. 8.

During the May 4, 2020 detention hearing, the defense requested a preliminary hearing on May 14, 2020, fourteen days following Defendant Alazo's initial appearance. The government objected and asked that the hearing be postponed until normal operations of the court resume. Notwithstanding this objection, the preliminary hearing was scheduled for May 14, 2020, with the Court suggesting that the defense determine if probable cause was truly at issue in this case given the factual proffer provided by the government.

Since the May 4, 2020 detention hearing, the government has provided the defense with a significant amount of discovery. Specifically, on May 8, 2020, the government produced as discovery the recording of one of the defendant's custodial interviews. On May 11, 2020, the government produced 126 pages of written discovery. On May 12, 2020, the government produced surveillance video from the Embassy of Cuba showing the offense in its entirety. On that same date, in response to the government's inquiry as to whether the defense still wanted to proceed with the May 14, 2020 preliminary hearing in light of the discovery provided, defense counsel responded that the defense planned to proceed with the hearing unless the government was willing to provide a plea offer to the defendant that would incentivize him not to go forward with the hearing as scheduled.

On March 16, 2020, Chief Judge Howell issued Standing Order, *In Re: Court Operations In Exigent Circumstances Created By the COVID-19 Pandemic*, Standing Order No. 20-9 (BAH) (March 16, 2020). The Standing Order specified that the District Court would remain open, but with "LIMITED OPERATIONS." *Id*. (emphasis in original). It further specified that the criminal duty Magistrate Judge would continue to conduct proceedings, specifically including initial appearances and detention hearings, after arrest. *Id*. The Standing Order did not mention

2

Preliminary Hearings. However, this Order specifically tolled the 30-day time period to indict from March 17, 2020 through April 17, 2020.

On April 2, 2020, the Chief Judge issued a new Standing Order. *See In Re: Extension of Postponed Court Proceedings in Standing Order 20-9 and Limiting Court Operations in Exigent Circumstances Created by the COVID-19 Pandemic*, Standing Order 20-19 (BAH) (April 2, 2020). Citing the conditions presented by COVID-19, the current Standing Order recognizes that it would be "unreasonable to expect return and filing of [an] indictment within the period specific in section 3161(b)," 18 U.S.C. § 3161(h)(7)(B)(iii), due to the "unavailability of a grand jury in this district arising from suspension of grand jury sessions in the interest of public health and safety." *Id*. Therefore, the current Standing Order further tolls the 30-day time period for filing an indictment, pursuant to 18 U.S.C. § 3161(b), from April 17, 2020 until June 11, 2020.

## II.    FACTUAL BACKGROUND

### a. Summary of Offense

Starting the night of April 29, 2020, and into the early morning hours of April 30, 2020, Defendant Alexander Alazo drove to the Embassy of Cuba, located at 2630 16th Street, NW, Washington, D.C., from Middletown, Pennsylvania to confront his "enemy," the Cubans, specifically, members of organized crime. For years, he believed that members of Cuban organized crime were surveilling him and wanted to harm him and his family. At the Embassy, he tried to light a gasoline-soaked Cuban flag on fire, but could not do so because it was raining. He yelled and screamed at the occupied building. "Shoot me if you want to shoot me!" "I'm here!" "I'm American!" "I'm Yankee!" And then Defendant Alazo took his AK-47-style semi-automatic rifle and fired it 32 times at the building, causing extensive exterior damage and penetrating the building itself. Thankfully and luckily, no one was injured. Defendant Alazo later

told law enforcement that had he seen anyone come out of the Embassy—even the Ambassador—he would have shot him because he is "the enemy." He believed he had to shoot first, before anyone exiting the building shot him.

Surveillance video from the building recorded the offense. As noted above, on May 12, 2020, a copy of this surveillance video was provided to the defense.

### b. Law Enforcement Response

On April 30, 2020, at approximately 2:13 a.m., officers of the Metropolitan Police Department ("MPD") arrived at the Embassy to investigate reports of gunshots in the area. After later analysis, it was determined that ShotSpotter[1] recorded 32 shots fired.

The officers found Defendant Alazo standing in front of the Embassy. He was holding an American flag and yelling nonsensical statements. The officers detained Defendant Alazo without incident. Defendant Alazo was wearing a sweatshirt to which he had affixed the letters FBI.

The officers observed a firearm laying in front of the pedestrian entrance gate to the Cuban Interests Section. On scene, Defendant Alazo told the MPD officers that the firearm was his. The firearm was later identified as a Century Arms Inc. semi-automatic rifle, an AK-47 style weapon.

Crime scene technicians collected 32 spent shell casings from the sidewalk and street where Defendant Alazo had been standing. They took photographs of damage sustained to the building's façade and damage from projectiles that had penetrated the building and which had struck interior objects of the occupied building.

Specifically, crime scene technicians observed and photographed multiple apparent defects in the front yard/driveway area including apparent damage to the exterior fencing, flag-pole, statue, and pillars.

---

[1] ShotSpotter detects and geolocates 90% of detectable outdoor incidents within the coverage area accurate to within a circle of 25 meters.

Additionally, apparent damage to the front entrance area was observed and photographed including apparent damage to an exterior glass window, the wooden front door, and front door area glass.

Multiple suspected bullet fragments were collected from the exterior of the Embassy grounds.

Further, crime scene technicians observed and photographed apparent damage to the interior of the Embassy, in the main lobby area, including to the lobby stairs, far side, interior wall, and ceiling area. Multiple suspected bullet fragments were collected from the interior of the Embassy in the main lobby area.

Crime scene technicians also recovered a Cuban flag that had writing on it that had possibly been doused with gasoline.

At the time of the offense, there were individuals inside of the Embassy.

### III. ARGUMENT

#### a. Preliminary Hearings

Federal Rule of Criminal Procedure 5.1(c) provides that a magistrate judge must hold a preliminary hearing "within a reasonable time, but no later than 14 days after the initial appearance if the defendant is in custody and no later than 21 days if not in custody." The defendant may consent, upon a showing of good cause, to continue the hearing. Rule 5.1(d). If the defendant does not consent, "the magistrate judge may extend the time limits only on a showing that extraordinary circumstances exist and justice requires the delay." *Id*. This rule is also codified in 18 U.S.C. § 3060(c).

As noted by the Second Circuit, the "extraordinary circumstances" standard for granting continuances was "added to the Rule in 1972 to prohibit the practice in some districts of routinely

5

granting a continuance to allow the Government to satisfy the probabl[e] cause requirement by filing an indictment." *United States v. Gurary*, 793 F.2d 468, 472 (2d Cir. 1986). While the extraordinary-circumstances hurdle may be difficult, it should not be impossible.

In fact, multiple jurisdictions have granted continuances of preliminary hearings as result of the COVID-19 pandemic. This court granted such a motion in *United States v. Theodore Douglas*, Case no. 20-mj-68 (DAR) (D.D.C. April 30, 2020). In *United States v. Carrilllo-Villa,* Case no. 20 Mag. 3073, 2020 WL 1644773 *2 (S.D.N.Y. April 2, 2020), Magistrate Judge Gabriel Gorenstein granted the government's motion to extend the deadline to hold a preliminary hearing for a defendant charged with drug trafficking offenses, finding the COVID-19 pandemic an extraordinary circumstance under Fed. R. Crim. P. 5.1(d). The Court in *Carrilllo* cited the fact that a number of recent cases from the Southern District of California have found that extraordinary circumstances were demonstrated as a result of the COVID-19 epidemic. Quoting *United States v. Munoz,* 2020 WL 1433400 (S.D. Cal. Mar. 24, 2020), where the court extended the preliminary hearing deadline by 30 days, the court stated:

> "[E]xtraordinary circumstances exist and justice requires" that defendant's preliminary hearing be continued beyond the 14-day deadline of Fed. R. Crim. R. 5.1(c). As outlined in the Order of the Chief Judge, current health restrictions have "greatly jeopardized" the ability of counsel, witnesses, parties, and Court staff to be present in the courtroom. As a result, the Court has suspended "all proceedings under Federal Rule of Criminal Procedure 5.1" until April 16, 2020. For these reasons, the deadline for holding a preliminary hearing in this case will be extended to April 24, 2020, absent further order from this Court.

*Id.* at 2 (quoting *Munoz,* 2020 WL 1433400 at *1). In addition to noting that the same disruptions exist in New York that served as the basis for the extension order in the Southern District of California, the court in *Carrilllo* recognized the legitimate impediments to holding a preliminary hearing raised by the government, including that multiple law enforcement officials

would be required to travel to the district to testify and that relevant evidence could be potentially unavailable. *Id.* Finally, the court in *Carrilllo* held that "the additional burden that was placed on him [the defendant] by being incarcerated during the current epidemic for any extension period that is granted, we do not find that these conditions bear on the 'extraordinary' circumstances analysis under Rule 5.1(d)…"

### b. Coronavirus (COVID-19) Global Pandemic and Court Operations

As this Court is well aware, COVID-19 is a severe acute respiratory virus that has infected millions of people across the world. On March 11, 2020, the World Health Organization categorized COVID-19 as a worldwide pandemic. That same day, Mayor Muriel Bowser declared a state of emergency and a public health emergency in the District of Columbia. On March 13, 2020, President Donald J. Trump issued an executive order declaring a National Emergency concerning COVID-19.

As of May 11, 2020, there were 6,495 confirmed cases of COVID-19 in the District of Columbia alone,[2] and COVID-19 cases continue to rise across the United States. Thousands of people in the region have self-quarantined based on possible exposure to COVID-19. As of March 16, 2020, dozens of large jurisdictions—including the District—have shut down local businesses to avoid further infection. Several states have even postponed primary elections in the upcoming presidential contest. Overall, the normal daily routine of millions of Americans has come to a halt as a result of this outbreak.

This Court has also taken action. As stated above, on March 16, 2020, the Chief Judge of the U.S. District Court for the District of Columbia issued a standing order regarding court operations in the D.C. District Court. *See* Standing Order 20-9 (BAH). The Court cited the

---

[2] *See Coronavirus Data for May 11, 2020*, https://coronavirus.dc.gov/release/coronavirus-data-may-11-2020 (last visited May 12, 2020).

ongoing state of emergency, the need to reduce exposure to the virus, particularly to high-risk persons, and the restrictions placed on public gatherings by the Mayor of the District of Columbia and other local jurisdictions. *Id.* ("reflecting the seriousness of the need to combat the community spread of the virus"). As part of the standing order, while the courthouse remains open to "support essential functions," the overall expectation is to dramatically reduce the need to appear in person and the possible exposure of litigants. *Id.* To that end, while the criminal duty Magistrate Judge "will continue to conduct proceedings . . . as necessary," the vast majority of hearings, to include jury trials, have been postponed and continued until further order of the Court. *Id.* A subsequent Standing Order, as noted above, was issued on April 2, 2020. This largely suspends the District Court's operations through June 11, 2020. *See* Standing Order 20-19 (BAH).[3]

### c. The Request to Continue

The COVID-19 outbreak has temporarily changed the operating procedure for this courthouse and the entire nation. To avoid unnecessary exposure, federal, state, and local jurisdictions have taken unprecedented measures to reduce the need for people to remain in public. These measures have touched every part of our life, from sports and entertainment to schools and universities to the criminal justice system. In this respect, it is incumbent that we take appropriate prophylactic actions to reduce viral exposure to all persons, including attorneys, courthouse personnel, defendants, law enforcement, and judicial officers. Simply put, the more time we spend in open court, the greater the opportunity to endanger others.

The current state of emergency sufficiently represents both "good cause" and "extraordinary circumstances" under both standards set forth above. Indeed, it is hard to

---

[3] On April 27, 2020, Chief Judge Howell ordered that anyone other than Members of the Court staff entering the courthouse must wear a facemask. *See* Standing Order 20-26 (BAH).

imagine any better cause for delay than a global pandemic causing a massive shutdown of government and private resources and dire warnings to limit in-person contact.

The government has endeavored to conduct immediate detention hearings during these initial appearances, though in this case, did not oppose the defense motion to continue the detention hearing.  In an effort to avoid in-person contact, the government has relied on statements and factual assertions contained in the sworn Criminal Complaints, and has proceeded by proffer, rather than calling witnesses.   A preliminary hearing, however, is quite different.   The practical limitations of conducting a full-blown preliminary hearing via video teleconference (VTC) where all participants appear remotely from separate locations are apparent.  For example, the ability to use exhibits during such a hearing via VTC is questionable.  In this case, there is highly probative surveillance video recovered from the Embassy of Cuba.  As noted, this has been produced to the defense in discovery.  However, to undersigned counsel's knowledge, there is no way to publish this to the Court during a preliminary hearing.  The VTC software used by the court does not seem to have a "screen sharing" function such that government counsel could publish the video to the Court.  And because the file size of the video is too large to provide in advance via email, there is no readily apparent method to provide this highly probative evidence to the Court during a VTC preliminary hearing.  The same is true for even a clip of body-worn camera video showing the arrival of police officers on-scene and the defendant's acknowledgment that the recovered firearm was his.   Other likely challenges in conducting a VTC under such circumstances would be maintaining an orderly hearing that allows for objections and sidebar conferences.   Furthermore, the likelihood of technical difficulties during a VTC, which could effectively delay or terminate such a proceeding further militate towards delaying a preliminary hearing until at least June 15, 2020.

Finally, unlike in *Gurary*, where the court was concerned about the government attempting to delay a hearing until an indictment could be sought, here, grand jury operations are suspended until at least June 11, 2020. Standing Order 20-19 (BAH). As the Court has already found in the current Standing Order, the ends of justice are served by this requested delay.

IV.     CONCLUSION

The government's request to continue the preliminary hearing is neither unfettered nor unreasonable. Given the present extraordinary circumstances, the safest course of action is to continue all hearings that require substantive, in-person litigation, and which could not be effectively conducted telephonically or via VTC. The aforementioned facts establish that "extraordinary circumstances exist" such that it is appropriate to postpone the preliminary hearing, and further establish that justice requires the delay resulting from the postponement of the preliminary hearing, pursuant to Fed. R. Crim. P. 5.1(d). As such, the government respectfully requests that this Court continue the hearing to at least June 15, 2020.

///

///

///

///

///

///

///

///

///

///

WHEREFORE, the United States respectfully requests that the Court grant the instant motion.

        Respectfully submitted,

        TIMOTHY J. SHEA
        UNITED STATES ATTORNEY
        D.C. Bar No. 437437

By:   */s/ Stuart D. Allen*
        Stuart D. Allen
        D.C. Bar No. 1005102
        Assistant United States Attorney
        Nicole S. Hutchinson
        California Bar No. 281524
        Special Assistant United States Attorney
        National Security Section
        United States Attorney's Office
        555 Fourth Street, N.W., Eleventh Floor
        Washington, D.C. 20530
        (202) 252-7794 (Allen)
        (202) 803-1670 (Hutchinson)
        stuart.allen@usdoj.gov
        nicole.hutchinson@usdoj.gov